*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DELBRIDGE Minors.

UNPUBLISHED
December 17, 2025
10:06 AM

No. 374093
Wayne Circuit Court
Juvenile Division
LC No. 2024-000029-NA

Before: GADOLA, C.J., and CAMERON and RICK, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to his minor children, KLD and KDD, under MCL 712.A19b(3)(a)(*ii*), (b)(*ii*), (g), and (j). We affirm.

## I. FACTS

In August 2023, the children in this case, KLD and KDD, then ages fourteen and thirteen, were removed from their mother's home after their infant brother died from fentanyl poisoning while in the care of the children's mother. At that time, respondent had not had contact with KLD and KDD since the previous summer. The children's mother admitted to Child Protective Services (CPS) that she had a history of substance use and currently used cocaine and heroin. The children were placed in the home of their maternal aunt.

Petitioner filed a petition requesting that the trial court take jurisdiction of KLD and KDD and seeking termination of the parental rights of respondent as well as the children's mother. After a preliminary hearing, the trial court placed KLD and KDD, who were living with their aunt, under petitioner's supervision.

At the adjudication hearing, Johnathan Meade, a CPS investigator, testified that his last contact with respondent was in September 2023, shortly after the death of the one-year old sibling of KLD and KDD. Meade testified that respondent at that time told him that he could safely care for KLD and KDD, and respondent had both housing and employment. Respondent was not providing financial support for the children, however, and had not had contact with the children since the summer of 2022. Meade testified that respondent gave no reason for his lack of contact

-1-

with the children and made no attempt thereafter to visit with or to gain custody of the children; he also had no further contact with Meade. The trial court assumed jurisdiction of KLD and KDD under MCL 712A.2(b)(1) and (2) on the basis that respondent had abandoned the children. The trial court then found that statutory grounds existed for terminating respondent's parental rights under MCL 712A.19b(3)(a)(*ii*) (desertion), (b)(*ii*) (failure to prevent harm to child's sibling), (g) (failure to provide proper care and custody), and (j) (likelihood child will be harmed if placed in home of the parent).

The trial court thereafter held a hearing on the best interests of the children, during which the children's foster care case manager testified that the children have a substantial relationship with their aunt and had lived with her for a considerable amount of their lives. The foster care case manager testified that the aunt provided stability and permanence for the children; the children felt safe and comfortable with their aunt and did not want to be reunified with respondent, though the children wanted to continue contact with him. Both the children and the aunt told the foster care case manager that they wanted the aunt to adopt the children and did not want a guardianship. The foster care case manager testified that respondent had not had regular nor recent contact with the children and respondent gave no reason for the lack of contact. In addition, KLD has several allergies, and the foster care case manager opined that respondent would be unable to provide adequate medical care. The foster care case manager also testified that respondent had been evaluated by the Family Assessment Center, which recommended that the children not be reunified with respondent.

At the conclusion of the best interests hearing, the trial court found that termination was in the children's best interests. The trial court reasoned that although the children's placement with a relative weighed against termination, respondent had a poor prognosis for reunification with the children, lacked a healthy bond with them, and was unwilling to provide safety and permanence for the children. In addition, the children and their aunt preferred adoption rather than a guardianship. The trial court concluded that adoption was the best permanency goal to provide permanence and stability for the children. The trial court terminated respondent's parental rights[1] to KLD and KDD. Respondent now appeals.

## II. DISCUSSION

Respondent contends that the trial court erred by finding that termination of his parental rights was in the best interests of the children because (1) the children were placed with a relative, which weighs against termination, and (2) the trial court failed to consider guardianship as an alternative to termination of his parental rights. We disagree that the trial court erred by finding that termination was in the best interests of the children.

We review for clear error the trial court's decision regarding a child's best interests. *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021). In doing so, we focus on the child, not the parent. *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). A trial court's decision is clearly erroneous if although there is evidence to support it, this Court upon reviewing the entire

---

[1] The trial court also terminated the parental rights of the children's mother.

evidence "is left with the definite and firm conviction that a mistake has been made." *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018) (quotation marks and citation omitted).

Once the trial court finds that a statutory basis for terminating a parent's rights has been established, the trial court must terminate the parent's rights if a preponderance of the evidence demonstrates that termination is in the child's best interests. MCL 712A.19b(5); *In re Lombard*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367714); slip op at 5. When determining the best interests of a child in a termination proceeding, the trial court is required to weigh the available evidence and consider a wide variety of factors, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, the advantages of the foster home over the parent's home, the length of time the child has been in care, the likelihood that the child could be returned to the parent's home in the foreseeable future, and the parent's compliance with the case service plan. See *In re Sanborn*, 337 Mich App at 276-277. A child's placement with a relative is an explicit factor for the trial court to consider when determining whether to terminate parental rights. *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). But although a child's placement with a relative generally weighs against termination of parental rights, that fact alone is not determinative. *In re Atchley*, 341 Mich App at 347.

In this case, the preponderance of the evidence supports the trial court's determination that the children's need for stability and permanence outweighed the fact of relative placement. The evidence supported the determination that adoption best served KLD's and KDD's need for stability and permanence. Respondent had abandoned the children, failing to have contact with the children or support them financially, and assumed no responsibility for the children's care or wellbeing, although he had the means to do so. The children had lived for much of their lives with their aunt, the aunt provided the children with stability and permanence, the aunt was eager to adopt the children, and the children were eager to be adopted by the aunt. Because the preponderance of the evidence supported the trial court's best interest determination, the trial court did not clearly err in terminating respondent's parental rights.

Respondent also argues that the trial court should have considered a guardianship for the children rather than terminating his parental rights. MCL 712A.19a(9) authorizes a trial court to appoint a guardian for a minor child in a termination of parental rights case. However, MCL 712A.19a(9) requires an alternative placement plan, such as a guardianship, only if (1) petitioner demonstrates that "initiating termination of parental rights to the child is clearly not in the child's best interests[;]" or (2) "the court does not order the agency to initiate termination of parental rights to the child . . . ." In addition, a trial court can only appoint a guardian if a guardianship is in the child's best interests. MCL 712A.19a(9)(c); *In re Rippy*, 330 Mich App 350, 359-360; 948 NW2d 131 (2019) (citations omitted).

In this case, no such demonstration in support of guardianship was made. The trial court considered and rejected the possibility that the children be placed in a guardianship with their aunt, concluding that a guardianship was not the in the children's best interests. The trial court reasoned that the children had spent a considerable amount of time in the care of their aunt, who provided the children with stability and permanence. The aunt and the children wanted adoption, and neither the aunt nor the children wanted a guardianship. Respondent had virtually no contact with the children for more than a year before the termination of his parental rights and made no effort to provide for the children even after they were removed from the home of their mother, though respondent had the financial ability to do so. We find no error in the trial court's rejection of a guardianship in this case.

Affirmed.

/s/ Michael F. Gadola
/s/ Thomas C. Cameron
/s/ Michelle M. Rick